St. Clair Guaranty & Title Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 7578. Promulgated October 10, 1927.

The evidence shows that the Commissioner erred in excluding $55,000 from petitioner's invested capital in connection with property acquired for stock.

*C. E. Pope, Esq.*, and *H. F. Driemeyer, Esq.*, for the petitioner.
*Thomas P. Dudley, Jr., Esq.*, for the respondent.

The Commissioner determined deficiencies of $886.49 and $953.81 for the fiscal years ending August 31, 1920 and 1921, respectively. Petitioner claims that the Commissioner erred in failing to include in invested capital for the taxable years the amount of $55,000 in connection with the issuance of capital stock for property acquired. The Commissioner allowed invested capital in the amount of $145,000 on account of stock issued by petitioner by reason of his holding that $70,000 par value of stock issued to one Schrader was for promotion services rendered the corporation in the sale of its stock and that these services were reasonably worth only $15,000. Petitioner claims that this stock was not issued for services rendered by Schrader but was issued for property purchased from him and that the Commissioner should have allowed an invested capital of $200,000.

### FINDINGS OF FACT.

Petitioner is an Illinois corporation, the corporate organization of which was completed on July 10, 1919. Its authorized capital stock was $200,000 and a subscription therefor payable in cash was made as follows:

| Subscriber | Number of shares | Amount | Subscriber | Number of shares | Amount |
|---|---|---|---|---|---|
| Henry C. G. Schrader | 10 | $1,000 | Alvin Boerner | 10 | $1,000 |
| E. W. Merz | 10 | 1,000 | William E. Schrader | 10 | 1,000 |
| W. L. Wiskamp | 10 | 1,000 | William E. Schrader, trustee | 1,930 | 193,000 |
| Alfred S. Kunze | 10 | 1,000 | | | |
| Edwin H. Fernau | 10 | 1,000 | Total | 2,000 | 200,000 |

The purpose of the organization as expressed in its certificate of incorporation was to engage in the business of abstracting titles, and in the title guaranty business.

Prior to the organization of the petitioner there were three companies actively engaged in the abstract business in St. Clair County, Illinois, namely, St. Clair Title Office, Donovan-Guignon Land Title Co. and Wolleson & Wolff Abstract Co. The first named had complete sets of abstract books, plats and indices, which extended back as to all lands in St. Clair County to title in the original source. The books of Wolleson & Wolff Abstract Co. were not complete but contained sufficient data so that it was actually and competitively engaged in business with the other two companies.

William E. Schrader had been, prior to the organization of the St. Clair Guaranty & Title Co., manager of the East St. Louis office of the St. Clair Title Office, a corporation the stock of which, except directors' qualifying shares, was owned by Frank B. Bowman. Schrader had been for several years working on the matter of the consolidation of the three abstract companies. Prior to the time

of the organization of the petitioner, he had, on June 25, 1919, secured from Frank B. Bowman for the consideration of $5,000 cash, an option, good until September 1, 1919, to purchase all of the shares of stock of the St. Clair Title Office for the additional sum of $50,000; he had likewise on June 27, 1919, executed a contract with the Belleville Savings Bank, then the owner of the Donovan-Guignon and Wolleson & Wolff abstracting companies, to purchase the same from the bank for $100,000; $75,000 thereof to be paid in cash and $25,000 in bonds secured by a mortgage on all of the assets of the three abstract companies then doing business in St. Clair County and to be absorbed in the organization of the St. Clair Guaranty & Title Co.

On July 11, 1919, at a meeting of the board of directors of the petitioner, Schrader made a proposition to sell to the petitioner all of the assets of the St. Clair Title Office and of the Donovan-Guignon and Wolleson & Wolff companies, and the directors adopted the following resolution:

Resolved, That this company accept the proposition to purchase the plants, assets, equipment and paraphernalia and property pertaining to the respective abstract companies, to wit, St. Clair Title Office, Donovan-Guignon Land Title Company and Wolleson & Wolff Abstract Company, and purchase the plants, assets, equipment and paraphernalia and all other articles used and owned by the said companies and pertaining to the transaction of their business for the said sum of $275,000, payable $100,000 of par value of bonds of this company, and $175,000 in cash, and moves the adoption of the resolution.

Whereupon the question was put by the chairman, shall the resolution offered be adopted, and upon call of the roll of the directors voted aye, and the resolution is declared duly adopted.

The stockholders and directors of the petitioner in due form authorized the issuance of $100,000, of bonds with which to make payment in part of the purchase price agreed upon, and thereupon transfer of the title of all of the assets of the St. Clair Title Office and of the Donovan-Guignon and Wolleson & Wolff companies was made to petitioner and in addition Schrader delivered to petitioner, United States Liberty bonds of the par value of $30,000, at a then market value of $25,448. One hundred thousand dollars of the bonds of the petitioner were delivered by it to Schrader and he was given credit for the payment of the 1940 shares of stock for which he had subscribed and in addition, at his direction, credit was given for the subscription price of the remaining 60 shares of the capital stock of petitioner subscribed by others. The transaction may be stated as follows:

Purchase price of assets of St. Clair Title Office and of the Donovan-
    Guignon and Wolleson & Wolff companies_____ $275,000
$30,000 par value United States Liberty bonds_____   25,000
                                                                          300,000

Payment was made by petitioner as follows:

| | |
|---|---:|
| By delivery of bonds of petitioner to Schrader_____ | $100,000 |
| By credit of the par value of 1,940 shares of stock subscribed by Schrader_____ | 194,000 |
| By credit at the direction of Schrader of the par value of 60 shares of stock subscribed by others_____ | 6,000 |
| | 300,000 |

Certificates for 1,940 shares of stock were issued to Schrader and certificates for 10 shares of stock each were issued to the other subscribers.

Of the $100,000 in bonds of petitioner, Schrader sold $25,000 to the First National Bank in East St. Louis for that amount in cash, $25,000 to the First National Bank in Belleville for that amount in cash and delivered $50,000 thereof to the Belleville Savings Bank for which that bank gave him credit to that extent on the price he had agreed to pay for the Donovan-Guignon and Wolleson & Wolff companies. Schrader sold $80,000 par value of the stock issued to him at par in each instance and used the proceeds of such sale to pay the obligations that he had personally incurred for the purchase of the St. Clair Title Office and of the Donovan-Guignon and Wolleson & Wolff companies. He also transferred to John Carson and R. W. Hilgard each 250 shares of stock in settlement of an obligation he had incurred to them for assistance rendered him by Carson and Hilgard in procuring the Belleville Savings Bank, of which Carson and Hilgard were officers, to sell the Donovan-Guignon and Wolleson & Wolff companies to him.

Schrader was able to acquire by purchase the abstract plants of the three companies named at the price which he paid for them because of the fact that by reason of the competition which existed between them the earning capacity of each had been reduced to a bare minimum.

The personal relationship which existed between Schrader and Bowman, who owned the St. Clair Title Office, was also a determining factor in his acquisition of that business. Bowman had always placed a value of $100,000 on that property, and he had made an offer of $75,000 for the Donovan-Guignon plant 10 years before the organization of the petitioner, which offer he was able and willing to pay but which had been refused. The fact that the value of the assets of the three companies consolidated in one ownership was very substantially more than the price which Schrader paid therefor and were worth the price which petitioner paid to Schrader therefor is demonstrated by the fact that three banking institutions of St. Clair County purchased at par the issue of $100,000 of petitioner's bonds secured by mortgage upon the assets of the three companies

which it had purchased, and by the fact that Schrader was able to and did sell $80,000 worth of the stock of the petitioner at par. This is further demonstrated by the fact that not only has the petitioner paid and discharged out of earnings all of the issue of bonds which it made before the maturity thereof but it has, in addition, paid a dividend in each year of its existence upon all of its stock outstanding originally at the rate of 6 per cent and for some years past at the rate of 7 per cent per annum. In addition it has accumulated and has a substantial surplus from earnings, which it has invested in a building for its general offices. At the time of the organization of the petitioner it would have required an investment of $300,000 to compile a complete set of abstract books for St. Clair County if, as a matter of fact, a complete set could have been made at that time. Many of the original records had become illegible by reason of the lapse of time. The details relative to the cost of compilation of a set of abstract books appear in the record but are deemed unnecessary to be here set out.

The Commissioner treated the stock of petitioner issued to Schrader as if issued to him in payment for promotion services, or as compensation for services rendered the corporation by him. The Commissioner allowed as invested capital the sum of $80,000 which was the amount of Schrader's own stock which he sold for cash. The Commissioner allowed further as invested capital $50,000, being the amount of stock transferred to Hilgard and Carson by Schrader, and the sum of $15,000 as a reasonable compensation for services rendered the corporation by Schrader, making a total of $145,000.

OPINION.

LITTLETON: From the facts as proved we think the determination of the Commissioner was erroneous. While it is true that Schrader was largely, if not wholly instrumental in the organization of the petitioner and in one sense might be termed the promoter of that corporation, the transactions between him and the corporation can not be viewed from the standpoint of promotion services. Before the organization of petitioner, Schrader had acquired a binding option upon the assets of the St. Clair Title Office for which he had paid the sum of $5,000 in cash and he had procured a binding and enforceable contract by which Belleville Savings Bank obligated itself to sell and Schrader obligated himself to buy the Donovan-Guignon and Wolleson and Wolff companies for the sum of $100,000. The properties owned by these companies merged in one ownership were fairly and reasonably worth $275,000. When merger of ownership was effected, competition was eliminated, and an opportunity was afforded to procure reasonable prices for work which had formerly

been done at such price as might be necessary in order to get the business.  In addition, economies in the reduction of operating expenses could be and were effected.  So long as these companies were separately engaged in business and in competition with each other there was not only a duplication, but a triplication of a large amount of work.

Schrader sold the properties he had acquired to petitioner at a price which represented their fair market value.  That was the end of the transaction so far as petitioner was concerned.  Schrader was dealing with a corporation, the stock of which he principally owned, but that fact did not require him to sell to it the properties of the three abstract companies which he owned at less than they were fairly worth, or at less than their market value.  The transaction was *bona fide*.

Schrader sold the bonds of petitioner which had been delivered to him and likewise sold $80,000 of the stock of petitioner which had been issued to him, in order to provide himself with funds to discharge the obligations he had assumed in purchasing the St. Clair Title Office and the Donovan-Guignon and Wolleson & Wolff companies, but such transactions are not to any extent unusual, or subject to criticism.  They were his individual affairs and were not transactions which he engaged in or carried on for the account of the petitioner, or in which petitioner was interested in any manner or to any extent, financially or otherwise.  The petitioner's invested capital can not be made to depend upon the obligations which Schrader incurred in the purchase of the properties which he sold to it, nor upon the manner in which he discharged those obligations.

We are of the opinion that petitioner is entitled to an invested capital of $200,000 as claimed, instead of $145,000 as determined by the Commissioner.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by SMITH and LOVE.